UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN ARELLANO, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>DIANA BECTON, et al.,<br><br>　　　　Defendants. | Case No. 24-cv-02250-WHO<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 10, 11, 12, 14 |

This case arises from the killing of plaintiff Stephen Arellano's son, Thomas, by Gerald Delgado. Plaintiff (hereafter "Stephen") believes that the criminal justice system failed him and his family. He contends the police failed to investigate the killing properly. He asserts that the District Attorney's office failed to investigate and properly charge and then prosecute Delgado, and then failed to follow the wishes of Stephen and other family members when the prosecution entered into a plea deal with Delgado. He believes that Delgado should have been in jail at the time of the killing, but was not as a result of charging decisions the District Attorney made in prior cases. Finally, he argues that judicial officers in the Superior Court of Contra Costa County colluded with the District Attorney and others, and should have rejected the plea and honored his wishes.

Stephen seeks to right these perceived wrongs through this case. As explained below, the defendants are immune from suit for the acts taken in their official capacities and he cannot enforce criminal laws through this civil suit. For these and other reasons discussed below, his claims must be dismissed.

## BACKGROUND

Stephen filed this suit on April 16, 2024. He is proceeding pro se. He also names as plaintiffs B.A., the son of Thomas, and Kathryn Clancy, the significant other of Thomas. Dkt. No.

1.

Stephen asserts that defendant Chris Loercher, a homicide detective with the City of Concord, is "corrupt" and that Loercher did not investigate the killing properly and did not speak to the family and other witnesses. He alleges that defendant Diana Becton (District Attorney of Contra Costa County), defendant Derek Butts (an Assistant District Attorney), and defendant Kevin Bell (an Assistant District Attorney, collectively "DA Defendants") are also "corrupt." He complains that they failed to (i) assign an investigator to the case, (ii) investigate the case or talk with the family witnesses, (iii) charge Delgado properly, (iv) hold a preliminary hearing, and (v) issue a probation report on Delgado or release a copy of that report to Stephen. He also complains that the DA Defendants decided to enter into an illegal plea deal with Delgado without speaking to witnesses, without consulting or getting agreement from plaintiff or his family, and without securing restitution for Tommy's son.[1]

Stephen contends that defendant Mary Ann O'Malley, a Contra Costa County Superior Court judge, was improperly assigned to preside over the case against Delgado by defendant Presiding Judge Edward Weil in conjunction with defendant DA Becton. He complains that Judge O'Malley had previously presided over criminal proceedings against Delgado that should have resulted in Delgado being in prison at the time of the killing, that she improperly let Delgado out on bail following a probation violation, and that as a result she should have recused herself from presiding over the Delgado plea and sentencing. He also complains that Judge O'Malley, in accepting the plea, ignored Stephen's evidence regarding prior crimes committed by Delgado and improperly kicked him out of Delgado's sentencing hearing. Stephen also names defendant Kate Bieker, the Court Executive Officer ("CEO") of the Contra Costa County Superior Court, who is alleged to have been responsible for behind the scenes activities leading to the Delgado plea.

---

[1] Stephen also alleged that defendant Nate Gartrell, (a journalist who "works for the DA") violated his rights by ignoring him, failing to ask him for his press release, and writing whatever the District Attorney or others wanted him to write. It does not appear that Gartrell has been served. Nonetheless, assuming the truth of Stephen's allegations, there is no basis in the law that would support a legal claim against a journalist for that conduct. The claim against Gartrell is DISMISSED. Because none of plaintiff's claims survive the defendants' motions to dismiss, plaintiff's request for "Service," Dkt. No. 10 is DENIED as moot.

Collectively, Judge O'Malley, Judge Weil, and Bieker are referred to as the "Judicial Defendants."

Based on these allegations, Stephen assert two causes of action for: (1) Conspiracy under 42 U.S.C. § 1983, for violation of civil rights, violation of due process, and deprivation of familial contact; and (2) violation of Article I, section 28 of the California Constitution ("Marsy's Law") protecting victim's rights. He seeks millions of dollars in damages, and asks the federal court to take jurisdiction over the case, charge Delgado with murder, and provide restitution to Thomas's son. Three sets of defendants move to dismiss.[2]

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not

---

[2] In each of his opposition briefs, Stephen complains that he was not served properly with the defendants' motions. See Dkt. Nos. 18, 21, 29. However, Stephen was able to file opposition briefs to each set of motions, and I have fully considered his arguments. Therefore, assuming there were issues with service (which does not appear to be the case), Stephen was not prejudiced by those issues.

3

possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I. PLAINTIFF CANNOT ASSERT CLAIMS ON BEHALF OF B.A. AND CLANCY

Defendants argue that as a pro se complainant, Stephen may bring claims in his own right but he cannot litigate claims on behalf of Thomas's son, Thomas's significant other, or Thomas's estate. Defendants are correct. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008 ("It is well established that the privilege to represent oneself pro se provided by § 1654 is personal to the litigant and does not extend to other parties or entities."); *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 698 (9th Cir. 1987) (without a showing of beneficial interest, trustee "may not claim that his status as trustee includes the right to present arguments pro se in federal court."). Stephen may only pursue claims relief that he has a right to on his own behalf.

Purported plaintiffs B.A., Kathryn Clancy, and the Estate are DISMISSED from this case as to all defendants, without prejudice to their personal ability to bring any claims in their own right.

### II. PLAINTIFF CANNOT ASSERT A CLAIM UNDER MARSY'S LAW

Article I, section 28 of the California Constitution, was amended by "The Victims' Bill of Rights Act of 2008," also known as Marsy's Law. *People v. Hannon*, 5 Cal. App. 5th 94, 97 (2016). Marsy's Law resulted in the "enactment of comprehensive provisions and laws ensuring a bill of rights for victims of crime, including safeguards in the criminal justice system fully protecting those rights and ensuring that crime victims are treated with respect and dignity." *Id*. at 99. However, Marsy's Law expressly "does not create any cause of action for compensation or damages against the State, any political subdivision of the State, any officer, employee, or agent of the State or of any of its political subdivisions, or any officer or employee of the court." Cal. Const. art. I, § 28(c)(2). Stephen cannot sue any of these defendants seeking damages under

4

Marsy's Law.

The Marsy's Law claim is DISMISSED WITH PREJUDICE as to all defendants.

### III.  PLAINTIFF CANNOT INVOKE FEDERAL CRIMINAL LAWS

The Complaint also make reference to violation of federal criminal statutes; specifically, 18 U.S.C. § 242[3] and 18 U.S.C. § 1829.[4]  But the statutes cannot be asserted by a private plaintiff in a civil action, like this one.  *See, e.g., Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) (affirming dismissal of claim under Section 242 as "criminal statutes that do not give rise to civil liability").

The claims based on 18 U.S.C. §§ 242, 1829 are DISMISSED WITH PREJUDICE as to all defendants.

### IV.  JUDICIAL DEFENDANTS

Stephen's complaints regarding the Judicial Defendants are based on the acceptance of Delgado's plea, the sentencing of Delgado for Tommy's killing, kicking Stephen out of the sentencing hearing, and other acts (or inaction) that resulted in Delgado not being in custody as a result of prior convictions.  These are acts the judges and Superior Court CEO took in their official capacities.  Those official acts are shielded by the Eleventh Amendment.  *See Munoz v. Superior Ct. of Los Angeles Cnty.*, 91 F.4th 977, 981 (9th Cir. 2024) ("state court judges cannot be sued in federal court in their judicial capacity under the Eleventh Amendment"); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007).

Simply put: Stephen cannot sue the Judicial Defendants for the acts they took in the proceedings against Delgado regarding Thomas's death or acts they took in any prior criminal proceedings regarding Delgado.  Those claims are barred by the Eleventh Amendment.  In addition, the claims against Judges Weil and O'Malley are also barred by absolute judicial

---

[3] 18 U.S.C. § 242 provides: "Whoever, under color of any law . . . willfully subjects any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, . . .  shall be fined under this title or imprisoned not more than one year, or both. . . . ."

[4] 18 U.S.C. § 1959 addresses: "Violent crimes in aid of racketeering activity."

immunity. *Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("judicial immunity is an immunity from suit, not just from ultimate assessment of damages. [] Accordingly, judicial immunity is not overcome by allegations of bad faith or malice").

And even if these immunities from suit did not apply – and they do – state officials like the Judicial Defendants are not "persons" who can be sued for damages for violations of civil rights under 42 U.S.C. §1983. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Finally, the non-monetary remedies that Stephen seeks – asking this federal court to take "jurisdiction" over Delgado and charge him for murder and require restitution for Thomas's son – are not remedies that are legally available to him or that this Court can require.

Accordingly, the claims against the Judicial Defendants are DISMISSED WITH PREJUDICE.

**V.      DA DEFENDANTS**

The heart of Stephen's complaint against the DA Defendants is his strong disagreements with the way Delgado was prosecuted; the initial charging decisions and then the plea deal that was offered by the DA Defendants and approved by the Judicial Defendants. He is not entitled to sue over those disagreements, however: It is well established law that he has no legally protectible interest in how Delgado was charged or prosecuted, in whether or what kind of plea deal was offered, nor in the approval of the plea. *See Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

The DA Defendants are also absolutely immune for the decisions made regarding the charging and prosecution of Delgado. *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001) ("acts undertaken by a prosecutor 'in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State,' are entitled to the protections of absolute immunity"); *Briley v. State of Cal*., 564 F.2d 849, 856 (9th Cir. 1977) ("prosecutorial immunity extends to the process of plea bargaining"). They are immune for all acts "intimately associated with the judicial process," including determination of how to charge

1  Delgado, decisions related to a preliminary hearing, decisions related to probation, and the specific
2  of the plea deal.  *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (absolute immunity extends to
3  prosecutorial functions "intimately associated with the judicial phase of the criminal process").
4  Conduct during the investigatory phase, prior to initiation of judicial proceedings, may not be
5  entitled to absolute immunity, but is protected by qualified immunity.  *Milstein*, 257 F.3d at 1010.
6  But there are no allegations that the DA Defendants were engaged in "police-type" investigation
7  surrounding Delgado's killing of Stephen, much less that they engaged in any investigation prior
8  to charging the defendant that would not be protected by qualified immunity.

All of the complaints Stephen currently alleges about the conduct of the DA Defendants are DISMISSED WITH PREJUDICE as they are associated with the judicial process and are barred by immunity.  However, I will give Stephen leave to amend if he can allege facts showing that any of the DA Defendants acted in ways that were NOT associated with the judicial process.

Stephen should be aware, however, if he attempts to amend his claim against the DA Defendants, that to state a claim for equal protection he must state facts plausibly showing *he* was treated differently by the DA Defendants because of *his* race.  There are no facts supporting that type of claim in his current Complaint.  Also, any claim based on the substantive due process right to noninterference with familial relations will fail unless Stephen can allege facts plausibly showing identified acts of the DA Defendants somehow led to Thomas's death and those acts were not in aid of the public welfare, which he has not alleged in the current Complaint.

## VI.  DEFENDANT LOERCHER

### A.  Motion to Strike and Rule 8

Loercher initially argues that Stephen's Complaint fails under Rule 8's "short plain statement" requirements and contains unnecessary and irrelevant allegations that should be struck under Rule 12(f).  I will not dismiss or strike the claims and allegations against Loercher on those grounds.[5]  Reading the allegations liberally, Stephen's complaints against Loercher are that

---

[5] I also will not dismiss the claims as barred by the two year statute of limitations for Section 1983 actions under Cal. Code of Civ. Proc. Section 335.1, because while the specific allegations against Loercher appear to have taken place in January 2022 (and this case was not filed until over 2 years later in April 2024), the central allegation is that Loercher failed to investigate the case properly.

1    Loercher lost or misrepresented possession of a cell phone with a recording of Thomas's killing,

2    that Loercher did not investigate the case properly, and that he failed to speak to the family and

3    other witnesses.

**B.    Section 1983/Violation of Civil Rights/Due Process Loss of Familial Contact**

"Traditionally, the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Reading Stephen's allegations in full, he appears to allege his constitutional rights were violated because he was treated unequally and denied the substantive due process right to familial relations with Thomas.

Stephen cannot base his Section 1983 claim against Loercher on a theory of loss of familial contact. The loss of Stephen's familial contact with Thomas was caused by Delgado's conduct. There are no allegations of any interactions between Loercher and Delgado or other grounds on which that claim could be based. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation.").

Nor are there any allegations that Loercher treated Stephen unequally based on race or another protected characteristic. The allegations regarding Loercher are that he lost a phone (following Thomas's killing), failed to conduct the investigation of the killing properly, and failed to communicate/interview the family and witnesses. There are no facts alleged that could plausibly support those alleged failures were based on Stephen's race.

Stephen has not alleged a claim that could plausibly make Loercher liable for violating a constitutional right of Stephen with respect to Loercher's investigation of Thomas's killing.[6]

---

That investigation likely continued past January 2022, when the killing took place.

[6] Loercher also argues any claim seeking damages against him must be dismissed for failure to submit a claim to the City of Concord, in compliance with California's Government Claims Act, Cal. Govt. Code §§ 945.4, 950.2. In his Opposition, Stephen submits evidence that he submitted a claim to Contra Costa County in November and December 2023. Dkt. No. 21 at ECF pg. 45 of 49. The claim attached by Stephen was not submitted to Loercher's employer (the City of Concord) and the claim appears to be untimely as filed on November 23, 2023, a year and a half after the

### C. Conspiracy & RICO

"Conspiracy is not itself a constitutional tort under § 1983." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012). A plaintiff must always be able to plead a claim showing a constitutional violation. *See Cassettari v. Nev. Cnty.*, 824 F.2d 735, 739 (9th Cir.1987) ("The insufficiency of these allegations to support a section 1983 violation precludes a conspiracy claim predicated upon the same allegations."). As discussed above, plaintiff has failed to allege *any* actionable claim based on an alleged violation of his constitutional rights.[7]

In addition, the caption page of Stephen's complaint appears to allege a claim for conspiracy under the Racketeer Influenced and Corrupt Organizations (RICO) Act. There are two fundamental problems with such a claim. First, Stephen has not identified facts in support of any defendant conspiring with another to deprive Stephen of any specific right. Second, Stephen's loss of his relationship with Thomas and personal suffering related to that loss are not the type of damages that can support a RICO claim. *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 364 (9th Cir. 2005) (personal injury or injury to an intangible interest are not actionable under RICO).

To the extent the RICO claim is asserted, it is DISMISSED WITH PREJUDICE as to all defendants. And, in light of the limited leave to amend given to allow Stephen to attempt to allege violations of his civil rights against the DA Defendants and Loercher, the conspiracy claim is DISMISSED WITHOUT PREJUDICE.

### CONCLUSION

It is not clear to me how Stephen can successfully amend the Complaint to state a claim against any of the defendants in light of the allegations he has made. There is no way that he can

---

last alleged interaction between Loercher and Stephen. *See* Govt. Code § 911.2 (requiring claim submission within six months after accrual), § 911.4 (late claim relief must be submitted "not to exceed one year after the accrual of the cause of action").

[7] Even if an actionable constitutional violation had been properly alleged against one of the defendants, Stephen fails to meet the "heightened" pleading standard for conspiracy cases in the Ninth Circuit which requires "detailed and specific" nonconclusory allegations "containing evidence of unlawful intent" by defendants. *See Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997). No facts whatsoever have been alleged that could possibly show acts and intent of any defendant to conspire with another defendant to deprive Stephen of his constitutional rights.

amend to state a claim against the Judicial Defendants—they are DISMISSED WITH PREJUDICE. No claim has successfully been pleaded against the remaining defendants, and given the immunities and statutes discussed above, I doubt that one could be. That said, Stephen is proceeding pro se and has not had the opportunity to amend. He may do so within the next 20 days if he can in good faith allege facts that plausibly state a cause of action.

**IT IS SO ORDERED.**

Dated: August 20, 2024



William H. Orrick
United States District Judge

10